## RECORD NO. 22-1838

(1:21-cv-02520-LKG)
(1:21-cv-02988-LKG)

---

In the
## UNITED STATES COURT OF APPEALS
## <u>FOR THE FOURTH CIRCUIT</u>

## WHITEFORD TAYLOR AND PRESTON, LLP; THOMAS CARROLL BEACH, III

*Defendant - Appellants*

**v.**

## SENS, INC; ROY SENS; MELANIE SUSAN SENS; SENS MECHANICAL, INC.

*Plaintiff – Appellees*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

\*\*\*\*\*
## <u>BRIEF OF APPELLANTS</u>

\*\*\*\*\*

WHITEFORD TAYLOR & PRESTON LLP
Kevin G. Hroblak, Bar No. 26180
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202-1636
(410) 347-8700
khroblak@wtplaw.com

*Counsel for Appellants*

ECCLESTON & WOLF, P.C.

Alvin I. Frederick, Bar No. 01459
7240 Parkway Drive, Suite 400
Hanover, Maryland 21076
(410) 752-7474
frederick@ewmd.com

*Counsel for Appellants*

**<u>TABLE OF CONTENTS</u>**

**TABLE OF AUTHORITIES**……………………………………..……i - iii

**JURISDICTIONAL STATEMENT**……………………………….…..1

**STATEMENT OF THE ISSUE**……………………………………..2

**STATEMENT OF THE CASE**……………………………….……..2

    A. Factual Background……………………………...………7

    B. The Surety Lawsuit………………………………..………12

    C. SMI and the Sens's Bankruptcies……………………..…...12

    D. TOLLING AGREEMENT……………………………...14

    E. PROCEDURAL HISTORY…………………………....…14

**STANDARD OF REVIEW**…………………………………...15

**ARGUMENT**………………………………………..16

    A. Inquiry Notice……………………………………..17

    B. Tolling by the Continuation Doctrine…………………….……26

    C. The Tolling Agreement Did Not Toll
       the Bankruptcy Trustee's Claim…...………………………30

**CONCLUSION**………………………………………..31

**CERTIFICATE OF COMPLIANCE**…………………………33

**CERTIFICIATE OF SERVICE**……………………………...34

# TABLE OF AUTHORITIES

## CASES

*Am. Gen. Assur. Co. v. Pappano*, 374 Md. 339 (2003)……………………..……..24

*Bresler v. Wilmington Tr. Co.*, 347 F. Supp. 3d 473 (D. Md. 2018)………...…27, 28

*Edwards v. Demedis*, 118 Md. App 541 (1997)………………………….…16, 21

*Fairfax Sav., F.S.B. v. Weinberg & Green*, 112 Md. App. 587 (1996)…..……21, 24

*Finch v. Hughes Aircraft Co.*, 57 Md. App. 190 (1984)…………………………...17

*First Virginia Banks, Inc. v. BP Exploration & Oil Inc.*,
206 F.3d 404 (4th Cir. 2000)……………………………………………..……...17

*Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76 (2008)……..…………20

*In re: Fields Farm Ltd. P'tnship*, 120 F.3d 261
(4th Cir. Aug 11, 1997)……………………………………….....24, 25, 26, 28, 29

*In re Maxima Corp.*, 277 B.R. 244 (D. Md. 2002)……………….…………16, 17

*In re Sens Mechanical, Inc.*, Case No. 17-20880………………………………13

*James v. Circuit City Stores*, 370 F.3d 417 (4th Cir. 2004) ………………………30

*Jenkins v. Simpson (In re: Jenkins)*, 784 F.3d 230 (2015)…………..…………...16

*Leonhart v. Atkinson*, 265 Md. 219 (1972)……………………..…...25, 27, 28, 29

*Lutheran Hosp. of Maryland v. Levy*, 60 Md. App 227 (1984)…..……………18, 21

*Newell v. Richard*, 323 Md. 717 (1991)…………………………………………..17

*O'Hara v. Kovens*, 305 Md. 280 (1986)…………………………………………24

*Pennwalt Corp. v. Nasios*, 314 Md. 433 (1988)……..……………………….…..24

*Poffenberger v. Risser*, 290 Md. 631 (1981)…..……………………………...16, 17, 23

*Sisters of Mercy of Union v. Gaudreau, Inc*.,

47 Md. App. 372 (1980)…………………………………………….…………18, 21

*Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A*.,

152 Md. App. 698 (2003)……………………………………………………16, 27, 28

*Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977 (4th Cir. 1984)…………..………...30

*Three Sisters Partners, LLC v. Harden*, 167 F.3d 843 (1999)……………………..16

*United States Surety Co. v. Sens Mech. Inc.*, Case No. 03-C-16-013001…………12

*Watson v. Dorsey*, 265 Md. 509 (1972)……………………………………27, 28, 29

*Wilson v. Dollar Gen. Corp*., 717 F.3d 337 (4th Cir. 2013)…………………….…30

*Windesheim v. Larocca*, 443 Md. 312 (2015)………………………………....18, 23


**STATUTES**

11 U.S.C. 541………………………………………………………………………….6

28 U.S.C. 158…………………………………………………………………………1

28 U.S.C. 1291……………………………………………………………………...2


**RULES**

Fed. R. Civ. Proc. 17……………………………………………………………….6, 31

Md. Rule 2-201……………………………………………………………………31

## JURISDICTIONAL STATEMENT

This is a consolidated appeal of two Bankruptcy Court opinions involving the same parties and issue to the U.S. District Court in the District of Maryland. Appellees Sens, Inc., Sens Mechanical Inc. ("SMI"), Roy Sens, and Melanie Sens (hereinafter collectively the "Sens Parties") filed a Complaint in the Circuit Court for Howard County, Maryland, alleging legal malpractice against Appellants Whiteford Taylor & Preston, LLP, and Thomas C. Beach III (hereinafter collectively "Appellants"), which was removed to the U.S. Bankruptcy Court for the District of Maryland on May 8, 2020.

The District Court has jurisdiction to review final judgments of a bankruptcy court, and interlocutory appeals of matters by leave of the District Court, pursuant to 28 U.S.C. § 158. The matter on appeal was a final order, as it provided declaratory relief and concludes all adversary proceedings involving the parties before the Bankruptcy Court. Although the issues presented to the Bankruptcy Court was set forth in a motion to dismiss, the Bankruptcy Court treated it as a "request for declaratory relief to ensure that the issues to be decided by the [Bankruptcy Court] are fully resolved." **JA 1467**.

Upon entry of an order by the District Court, Appellants timely noted and filed an appeal pursuant to the Federal Rules of Appellate Procedures. This Court has

1

appellate jurisdiction over the questions presented with respect to the District Court's order in affirming the Bankruptcy pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the District Court erred in affirming the Bankruptcy Court's holding that the statute of limitations did not begin to run until entry of summary judgment against the Plaintiff and otherwise failed to apply and follow Maryland law.

## STATEMENT OF THE CASE

This matter arises from a legal malpractice claim initiated by the Appellees against Appellants on February 28, 2020 in the Circuit Court for Howard County after the Appellees were sued for walking off of a construction job by various surety companies that resulted in a judgment against the Appellees. **JA 6 – JA 19**. The malpractice Complaint was filed after many of the plaintiffs had filed bankruptcy, in which bankruptcy cases the plaintiffs never disclosed the existence of any claims against Appellants as assets, and further did not include the Bankruptcy Trustee as a party to a tolling agreement at a time when any claims of the bankrupt Appellees that existed were undoubtedly property of their bankruptcy estates and subject to control only by the Bankruptcy Trustee. As a result of these non-disclosures and bankruptcy estate property issues, the case was removed to the Bankruptcy Court to address whether the Appellees could pursue the claims. While the Complaint was pending in the Bankruptcy Court, the Appellees filed an Amended Complaint

2

removing Mr. Sens and Mrs. Sens as Plaintiffs and substituting the Bankruptcy Trustee for Sens Mechanical Inc. **JA 20 – JA 22;** *see also* **JA 23 – JA 55**.

Pursuant to an Agreed Order, the Bankruptcy Court agreed to determine certain issues in this matter, including the issue which is the subject of this appeal: whether the original Complaint and the Trustee's Amended Complaint are time-barred by the statute of limitations. **JA 1186 – JA 1239**.   In its Memorandum Opinion, the Bankruptcy Court failed to address significant facts and events that would have placed a reasonable person on notice of potential claims against Appellants under the applicable Maryland standard for analyzing a limitations period, as well as analogous case law from this Court.  In holding that limitations did not begin to run until December 18, 2018, when the Circuit Court for Baltimore County granted summary judgment against Appellees in the *Surety Lawsuit,* the Bankruptcy Court relied on the Appellees' ***actual*** notice of the claims against the Appellants as opposed to inquiry notice under Maryland law.  ***Id.***

The evidence below, however, demonstrates that the material facts relating to the alleged claims against the Appellants for legal malpractice were known to the Appellees no later than early January 2017, such that they were on inquiry notice for purposes of the accrual of the statute of limitations.  No evidence whatsoever was presented by the Appellees, or discussed by the courts below, regarding the exercise of *any* reasonable diligence by the Appellees to discover the claims, even after the

3

Appellees terminated their representation on January 4, 2017. Nor was there any evidence presented by the Appellees, or discussion by the courts below, of any change in circumstance that existed between that early January 2017 time period and the testimony of Mr. Sens that he ***actually*** learned of the alleged claim when summary judgment was entered against him in favor of the sureties. This "maturation of harm" theory has been rejected resoundingly by Maryland courts, as discussed below. Accordingly, in the face of the facts in the record and applicable law—and the absence of facts presented by the Appellees—the only conclusion consistent with the law that could be reached is that the three-year limitations period applicable to the Bankruptcy Trustee's claims expired before the filing of the Complaint on February 28, 2020, and the Amended Complaint on July 28, 2020.

Subsequently, the instant matter was appealed to the U.S. District Court for the District of Maryland. **JA 1345 – JA 1348.** The District Court affirmed the Bankruptcy Court's ruling that the case was not time barred, and held that the lawsuit filed on February 28, 2020 was timely. **JA 1567 – JA 1472**. In reaching its conclusion, the District Court adopted the Bankruptcy Court's analysis of the facts, which caused the District Court to make the same error in overlooking the inquiry notice that existed long before the actual notice found occurred. In failing to apply clear and decisive precedent regarding inquiry notice with respect to its review of the Bankruptcy Court's opinion, the District Court perpetuated the error. Indeed, the

4

District Court did not analyze the Appellees' receipt of the demand by the sureties, or the filing or service of the Surety Lawsuit against them as being inquiry notice. Instead of determining the date that Appellees knew or should have known of their claim, both the Bankruptcy Court and District Court held that limitations did not begin to run until Appellees had actual knowledge of their claim, notwithstanding that no new information about Appellants' conduct was revealed to Appellees at that time, and that an objectively reasonable party in the position of Appellees would have been on inquiry notice far earlier when Appellees received a demand notice, became the subject of a lawsuit seeking in excess of $17 million in damages, and were served with the lawsuit.  In this regard, both courts pointed to the entry of judgment *and* deposition testimony of Mr. Sens about when he subjectively became aware of a potential claim against Appellants.  Again, this subjective analysis is contrary to the well-established objective standard under Maryland law.

Additionally, the District Court erred in affirming the Bankruptcy Court's erroneous application of Maryland's "continuation of events principle" to toll limitations, and extended application of the principle to beyond the termination of Appellants' representation of the Appellees, which concluded on January 4, 2017. There are no legal or factual reasons to support that conclusion.  Appellees had reason to know and should be held to have known of their potential claim when they were served with a lawsuit seeking millions of dollars in damages. There were no

affirmations or representations made by Appellants in connection with that lawsuit after the representation concluded, and, it is uncontroverted that no new information was revealed to Appellees at a later time. Nevertheless, both the Bankruptcy Court and District Court not only failed to address the inquiry notice arising from the lawsuit, they failed to apply such notice to the continuation of representation doctrine. Even if one assumes that the Appellees are relieved from doing any reasonable investigation during the term of representation, which is not the law, then limitations would begin to run on January 4, 2017. The Complaint was filed on February 29, 2020 by plaintiffs who had no standing to pursue the claims because the claims had already been transferred by operation of 11 U.S.C. § 541 to the bankruptcy estates, with an extension of time to file by way of a Tolling Agreement only granted to the Appellees, and not the Bankruptcy Trustee who then controlled those claims as property of the bankruptcy estates.

Thus, the expiration of limitations for the Bankruptcy Trustee's claims is not resurrected by either the Tolling Agreement signed between non-parties, or the relation back rules under Federal Rule 17 or its Maryland rule equivalent. First, the Bankruptcy Trustee is a non-party to the Tolling Agreement and neither the claims of the Bankruptcy Trustee nor the bankruptcy estate were tolled under any objective reading of the four corners of the Tolling Agreement. The claims asserted by the Bankruptcy Trustee are indisputably estate claims—not claims of the Sens or Sens

6

Mechanical Inc. ("SMI")—and they remain property of the estate, which can only be pursued by the Bankruptcy Trustee. Second, the effect of a later substitution of the Bankruptcy Trustee into the case as a real party in interest under the rules of procedure is to treat the case as if the real party in interest had filed the case originally. The result under that mandate is that the Bankruptcy Trustee's claims were barred at the time of the original Complaint. Accordingly, the Appellees do not benefit by a change to the limitations bar by either the Tolling Agreement or the relation back doctrine.

Accordingly, based on the facts in the record and applicable law, Appellants respectfully submit that the District Court erred in affirming the Bankruptcy Court's ruling, and that the three-year limitations period applicable to the Trustee's claims expired before the filing of both the original Complaint on February 28, 2020, and the Amended Complaint on July 28, 2020.

## A. Factual Background

This matter concerns a dispute arising out of a contract between Inns of Ocean City ("IOOC") and Sens, Inc., to build a Marriott Residence Inn Hotel, a 150-unit, eight story hotel located at 300 Sea Bay Lane, Ocean City, Maryland (the "Project"). **JA 25**. The Project was divided into two phases. The first phase entailed laying foundation and pouring concrete for the hotel. On March 16, 2015, the contract was amended to include the second phase, which was the construction of the hotel. **JA**

**26**. IOOC and Sens, Inc. agreed to a date of substantial completion of the project by

March 30, 2016. **JA 93 − JA 104**. The amended contract included a clause that states,

> Contractor and Owner each recognize and agree that the drawings and
> specifications are incomplete or inaccurate in a number of respects and
> include omissions and deficiencies…[t]he parties are willing to proceed
> with the construction of the Project, even with the understanding and
> acknowledgement that the drawings are incomplete, inaccurate, lacking
> details and include deficiencies, errors and omissions…all work
> necessary to implement the above at no additional cost, expense, or
> charge to the owner.

First Amendment to Contract and Exhibit I (the "Amended Contract"). *Id.*, *see also*

**JA 97.** After the amendment, IOOC and the lender on the project required Sens to

secure payment and performance bonds on the Project. **JA 26**. However, Sens was

unable to secure a $17.8 million bond on its own, and was required to provide

additional indemnitors. *Id.* As such, Mr. and Mrs. Sens, individually, and SMI

became co-indemnitors for bonds (the "Bonds") provided by the United States

Surety Company and U.S. Specialty Insurance Company (collectively the

"Sureties"). *Id.*

Thereafter, Sens began work on the Project, but encountered delays which

Sens contends was the result of IOOC's failure to provide necessary drawings and

plans for construction. **JA 25. at pg. 5.** As early as August 11, 2015, IOOC was

aware of significant delays on the Project and was threatening to take action against

Sens. In response, Sens claimed that IOOC did not provide plans and permits, and

failed to answer its requests for information. In light of these issues, Sens attempted

8

to obtain change orders for extensions of time. However, IOOC, relying on Exhibit I, denied those requests. Mr. Sens testified, "[IOOC] knew it was impossible for [Sens] to build that. No one could have built it, as we know…So this was designed for failure, from owner to me. This – this document [Exhibit I] was designed to make me fail." **JA 115 (Deposition of Roy Sens 185:10-186:17)**.

Subsequently, after the March 30, 2016 deadline for substantial completion has already passed, Sens had a meeting with a representative of IOOC in April, 2016. **JA 27**. At the meeting, the representative from IOOC insisted that Sens was going to be held to the deadlines. After this meeting, and after IOOC's assessment of liquidated damages under the Contract, Sens hired Appellants as its attorneys. ***Id.*** On May 19, 2016, Sens sent a letter to IOOC informing them that Sens was suspending all work on the Project due to the lack of final drawings, executed change orders, payments, and the impending liquidated damages. ***Id.*** On June 6, 2016, IOOC wrote to the surety that the job is way behind schedule and Sens' performance was "late and disappointing" due to "project management deficiencies." **JA 125 – JA 126.** The IOOC continued to assess substantial liquidated damages against Sens.

After Sens' May 19, 2016 letter, IOOC and Sens began negotiating an extension to the substantial completion deadline to try and resolve the dispute over liquidated damages. IOOC proposed a change order that extended the deadline for substantial completion to May 31, 2016. **JA 128 – JA 130**. The proposed change

9

order did not change the language of the provisions of Exhibit I, reaffirming the requirement of Sens to "expressly and unconditionally waive…and forever discharge Owner…from any and all claims, demands, requests for additional time or costs associated with additional time including, but not limited to general conditions and fee arising out of, or in any way connected with any known as of the date of the execution of the change order associated with this exhibit alleged errors, omissions, or other general deficiencies in the design documents supplied by the Owner to the Contractor for the Project. **JA 129**. The change order further states that "nothing in this Change Order No. 12 shall act as a waiver or release of the Owner's right to assess liquidated damages should the Contractor fail to achieve substantial completion on the Project by May 31, 2016." **JA 129 – JA 130.**

On June 2, 2016, a Sens representative emailed Mr. Beach a copy of Change Order 12, indicating that Sens is "trying to get [the dispute] resolved asap so we can get paid." Mr. Beach responded on the same day, stating "I am not satisfied with the document. On my calendar 31 May was last Monday. What about the elephant in the room, the missing plans, specs, and permits? No [liquidated damages] until a new completion date some reasonable time after receipt of missing documents permits. No waiver of Sens rights. Stop work until resolved. You are being played." **JA 132.**

After receipt of Mr. Beach's email, Mr. Sens executed Change Order 12 on June 9, 2016, against the advice of Mr. Beach. **JA 121 at 255:19-256:6.** The change

10

order was executed 10 days after the new date of substantial completion set forth in the document. Sens nonetheless signed the document despite knowing that Sens was not able to complete the project by May 31, 2016 (which had already passed when Mr. Sens executed the Change Order). **JA 28.**

After Sens signed Change Order 12, on July 28, 2016, Appellants, at the direction of Sens, sent IOOC a Notice of Noncompliance, outlining the reasons that Sens believed IOOC was not in compliance, including the missing and incomplete design documents, permits, approvals, and drawings. Sens alleged that on August 1, 2016, Appellants sent Sens an email suggesting that the terms of the Contract allowed Sens to discontinue its work, and as a result, on August 2, 2016, Sens stopped work on the Project. In response, on August 4, 2016, IOOC notified the Surety of Sens' default and their intent to terminate Sens for cause. **JA 28** at ¶ 20.

The parties met on August 18, 2016 as part of the parties' attempt to resolve the dispute, but the effort was unsuccessful. **JA 29**. On August 30, 2016, IOOC notified Sens that it was terminating their right to perform further work on the project for cause due to Sens' abandonment of the job, refusal to supply skilled workers and proper materials, failure to make prompt payment to subcontractors, breach of contracts, and failing to maintain the Project's schedule. *Id*.

### B. The Surety Lawsuit

On or about December 21, 2016, the Sureties filed suit against the Sens and other indemnitors in the Circuit Court for Baltimore County (the "Surety Lawsuit"), seeking damages in the amount of $17,575,838.84, after IOOC made a claim against the Bonds demanding payment for Sens' remaining obligations under the contract for the Project. *See United States Surety Co. v. Sens Mech. Inc.*, Case No. 03-C-16-013001. Mr. Sens was served with the Surety Lawsuit in January 2017. **JA 336; JA 348 – JA 349**[1]. On January 4, 2017, Appellants terminated its legal representation of the Sens. Subsequently, the Surety Lawsuit proceeded in the normal course, with Sens, and Mr. and Mrs. Sens, participating as parties. On December 18, 2018, the Circuit Court for Baltimore County granted summary judgment in favor of the surety group. **JA 32 at ¶ 40.**

### C. SMI and the Sens's Bankruptcies

On June 21, 2017, Mr. and Mrs. Sens filed for personal bankruptcy under Chapter 7 of the Bankruptcy Code, *In re Roy Sens and Melanie Susan Sens*, Case No. 17-18481. Schedule A/B, which covers property of the debtors, required Mr. and Mrs. Sens to list any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment." Mr. and Mrs. Sens answered the

---

[1] Mr. Sens misspoke in his deposition that SMI was served in January 2016. The "Surety Lawsuit" was filed in December 2016, SMI was in fact served in January, 2017.

question under penalties of perjury "no." Case No. 17-18481 ECF 3-1 at p. 15. They also scheduled their 100% equity interest in Sens, and valued the company at only $1, even though they now suggest Sens had a claim against Appellants. *Id*. at p. 12.

During the pendency of the bankruptcy, Mr. and Mrs. Sens amended their schedules a total of three times, once listing all litigation in which they were involved, however, they never disclosed or identified any claim or potential claim against Appellants. Mr. and Mrs. Sens eventually settled with the Bankruptcy Trustee by paying the bankruptcy estate $64,402.50, the total value of non-exempt assets listed on their Amended Schedules, to effectuate their discharge of debts. On November 16, 2017, based on the information disclosed and assets administered by the Bankruptcy Trustee, which did not include the claims against Appellants, Mr. and Mrs. Sens obtained a discharge on their debts. ***See* JA 1134**.

On August 11, 2017, SMI filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Maryland. *In re Sens Mechanical, Inc*., Case No. 17-20880. The case was subsequently converted to a Chapter 7 proceeding. On August 25, 2017, SMI filed "Schedules A-F." Schedule A/B which covers property of the debtors required SMI to list any "causes of action against third parties (whether or not a lawsuit has been filed)." SMI answered the question under penalties of perjury "no." Case No. 17-20880 ECF 17 at p. 7. The schedules did not identify any claim against Appellants. On December 1, 2017, SMI amended its

13

schedules; however, the claim now asserted against Appellants was not listed there either. A Final Decree was entered by the Bankruptcy Court on August 14, 2019, and SMI never once disclosed the existence of any claim against Appellants prior to obtaining the Final Decree—even though a demand letter had been sent to Appellants more than two months prior.

### D.    Tolling Agreement

On July 1, 2019, the Sens Parties and Appellants entered into a Tolling Agreement that tolled the statute of limitations for claims asserted only by the Sens Parties against the Appellants for a period of five months, from July 1, 2019 to December 1, 2019. **JA 316 – JA 321.** The Tolling Agreement was extended twice, through February 1, 2020, and then through March 1, 2020. **JA 322 – JA 325**. The Bankruptcy Trustee and bankruptcy estates were not parties to the Tolling Agreement. **JA 316 – JA 325**.

### E.    Procedural History

The Sens Parties filed suit against Appellants on February 29, 2020. **JA 6 – JA 19.** The claims were instituted by Mr. and Mrs. Sens, Sens Inc., and SMI in the Circuit Court for Howard County of Maryland. On May 8, 2020, Appellants moved to remove the Complaint to the Bankruptcy Court. **JA 20 – JA 22.** On July 28, 2020, the bankruptcy trustee for the Sens Parties filed an amended complaint, which removed Mr. and Mrs. Sens as the plaintiffs, and added the SMI Trustee as the

14

plaintiff on behalf of SMI. **JA 23 – JA 55.** The Bankruptcy Court entered an order on October 15, 2020, decreeing that it shall "retain the case to resolve preliminary issues based on bankruptcy law and then, with regard to any claims not implicated by this Court's rulings or otherwise not dismissed, this matter should be remanded to the Circuit Court for Howard County, Maryland for further proceedings." **JA 60 – JA 63.** On September 30, 2021, the Bankruptcy Court issued a Memorandum Opinion and Order resolving the preliminary issues of the instant legal malpractice suit. **JA 1126 – JA 1179; *see also* JA 1186 – JA 1239**. Of the relevant issues on appeal are the Bankruptcy Court's finding that (1) the Sens Parties timely filed the original Complaint on February 28, 2020, (2) the statute of limitations for the legal malpractice suit began to run on December 18, 2018, when the court granted the Sureties' motion for summary judgment, and (3) the original lawsuit, as a result, was timely filed as it occurred within three years of the Sureties Lawsuit. *Id*.

Subsequently, Appellants appealed the Bankruptcy Court's final judgment on these issues to the U.S. District Court in the District of Maryland. **JA 1345 – JA 1348.** The District Court, after briefing from the parties, affirmed the Bankruptcy Court's finding with respect to the issues regarding statutes of limitations. **JA 1457 – JA 1472.**

15

## STANDARD OF REVIEW

This Court reviews the judgment of the District Court sitting in review of a bankruptcy court *de novo*, applying the same standard of review that was applied in the District Court. *Three Sisters Partners, L.L.C. v. Harden*, 167 F.3d 843, 847 (1999). The legal conclusions of both the district court and the bankruptcy court are reviewed de novo and the factual findings of the bankruptcy court are reviewed for clear error. *See Jenkins v. Simpson (In re Jenkins)*, 784 F.3d 230, 234 (2015).

## ARGUMENT

Under Maryland law, legal malpractice claims are subjected to a three-year statute of limitations. Md. Code Ann. Cts. & Jud. Proc 5-101. *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.*, 152 Md. App. 698, 712 (2003). The statute of limitations begins to run when the claimant in fact knew, ***or reasonably should have known*** of the wrong. *Poffenberger v. Risser*, 290 Md. 631, 636 (1981) (emphasis added). For the purposes of the discovery rule, the "plaintiff [] has the burden of proving the applicability of the rule since, ordinarily, defendant will have no personal knowledge of when plaintiff discovered, or should reasonably have discovered, the facts upon which his cause of action is based, and plaintiff will know what facts were known to him at any given period in time and what action he took to protect his rights." *Edwards v. Demedis*, 118 Md. App. 541, 563–64 (1997); *see also In re Maxima Corp.*, 277 B.R. 244, 248 (D. Md. 2002) (explaining that Plaintiffs

16

must demonstrate that they acted with reasonable diligence in discovering the injury). In *Maxima*, the District Court affirmed ***the summary judgment dismissal of a bankruptcy trustee's complaint on limitations grounds***, holding that it was the trustee's "burden of proving that the discovery rule applies." *Maxima*, 277 B.R. at 248 (citing *Newell v. Richards*, 323 Md. 717, 594 A.2d 1152, 1156 (1991); *Finch v. Hughes Aircraft Co.*, 57 Md. App. 190, 469 A.2d 867, 893 (1984). The Court further explained that "[t]o establish entitlement, [the trustee] must show that [the debtor] acted with reasonable diligence in determining the fact of injury, but was unable to discover it." *Id.* Because "reasonable minds would not differ that plaintiff has failed to exercise due diligence in discovering the existence of his injury," summary judgment is appropriate. *See id.* (citing *First Virginia Banks, Inc. v. BP Exploration & Oil Inc.*, 206 F.3d 404, 407 (4th Cir. 2000).

Based on the factual record in this case, there is *no evidence* from the Bankruptcy Trustee regarding *any* exercise of due diligence or *any* reason the Appellees could not have discovered the claim if they had exercised diligence in 2016, instead of a later time. Thus, as supported by *Maxima*, the Bankruptcy Trustee did not satisfy her burden. *See In re Maxima Corp.*, 277 B.R. 244 (D. Md. 2002). Both the Bankruptcy Court and District Court ignored Appellees' burden to establish application of the discovery rule. Having not met this burden to demonstrate any reasonable diligence, dismissal was appropriate.

17

### A. Inquiry Notice

The inquiry notice standard for limitations does not require ***actual*** knowledge of the cause of the injury. The standard is an objective one. *See Poffenberger*, 290 Md. 631, 636. In this regard, Maryland courts are clear that the discovery rule does not toll limitations simply because a plaintiff is unaware of the cause of his injury, and does not postpone a claim's accrual pending an additional period for making an investigation. *See Sisters of Mercy of Union v. Gaudreau, Inc.*, 47 Md. App. 372 (1980); *Lutheran Hosp. of Maryland v. Levy*, 60 Md. App. 227, 237 (1984); *Windesheim v. Larocca,* 443 Md. 312, 327 (2015). In *Sisters of Mercy*, the Court found that the plaintiff's claim accrued when the Sisters became aware of water leakage through their roof and walls, finding that, had they exercised reasonable diligence at that time, they could have ascertained the cause and responsibility for the leakage. 47 Md. App. 372, 378-79.

The District Court, in affirming the Bankruptcy Court's ruling, erred by not even considering the facts that Appellees had before them regarding the filing and service of the Surety Lawsuit against them. Any objective person would be on inquiry notice if he or she was served with a lawsuit seeking millions of dollars that was related to the alleged advice Appellees claim was given to them by Appellants. Like in the Sisters of Mercy case, armed with this notice, "had they exercised reasonable diligence at that time, they could have ascertained the" alleged claims.

They failed to do so, there being no evidence in the record of any diligence, so the simply fact that they were unaware of their claim does not toll the limitations period.

Instead of addressing the notice by the sureties, the filing of the Surety Lawsuit, the service of the lawsuit, and the absence of any diligence by Appellees, the District Court upheld the Bankruptcy Court's ruling, that because Appellants did not notify Appellees of potential claims they may have against Appellants when the attorney-client relationship was terminated in January 2017, Appellees did not have inquiry notice. Notably, without at all addressing the Surety Lawsuit demand, filing, or service, the District Court stated that there are no facts present in the record to demonstrate that the Appellees had reason to inquire about their legal malpractice claim. **JA 1470**. From there, both the District Court and Bankruptcy Court focus on actual notice and the entry of judgment in that very lawsuit, without any facts demonstrating that Plaintiffs had different knowledge of the basis of the case and their alleged claims as of entry of the judgment. In doing so, the District Court ignored the burden of Appellees, ignored the objective standard, and failed to address whether a reasonable person would not inquire as to the causes and basis for a lawsuit, as well as potential claims against any third-parties, when the lawsuit is seeking more than $17 million in liability related to the alleged advice given by the Appellants.

The sole basis of the Bankruptcy Court's ruling is that it found, after reviewing testimony of Mr. Sens, that Mr. Sens himself, subjectively, did not know that a potential claim existed until after the Circuit Court's granting of summary judgment. *See* **JA 1209 – JA 1210.** This was the basis for the Bankruptcy Court to find that a reasonable person in Mr. Sens's situation would not have known that a claim existed. Given the fact that the determination is whether an ***objective*** person would have inquired about a claim, the Bankruptcy Court's reliance on Mr. Sens and his ***subjective*** belief is an error in the application of the objective standard. For these reasons, the District Court affirmed the Bankruptcy Court's finding that "the limitations period began to run on December 18, 2018, because the evidence shows that this was the date on which the Sens Parties knew of circumstances which would cause a reasonable person in their position to investigate with reasonable diligence and that investigation would have led to the discovery of the alleged legal malpractice by WTP." **JA 1469**.

The District Court's ruling is contrary to established Maryland Law. While it is true that a fiduciary relationship between an attorney and a client typically means that it is reasonable to rely on the advice of the attorney, the Court in *Frederick Road* qualified that a plaintiff in a legal malpractice claim can trust the advice received in a fiduciary relationship, but cannot do so blindly. *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76,108 (2008) (stating that a plaintiff "can trust, albeit not blindly,

20

that such a relationship will not be violated"). Again, as Maryland Courts have found, the statute of limitation does not begin to run when the cause of the harm is discovered, but rather, it is when the injured party *could have discovered it if it reasonably investigated*. *Sisters of Mercy,* 47 Md. App. 372 (emphasis added). The statute itself allows sufficient time for a diligent inquiry. *See Lutheran Hosp. of Maryland v. Levy*, 60 Md. App. 227, 237 (1984).

In addition, the ordinary person standard measures what the plaintiff has done against what should have been done from the lens of an ordinary person put into the position of the plaintiff. In finding that limitations barred the claim at issue, the Court of Special Appeals of Maryland in *Fairfax Sav., F.S.B. v. Weinberg & Green*, 112 Md. App. 587 (1996) rejected the position that the Bankruptcy Court and District Court here relied upon, that the limitations did not begin to run until judgment was entered or the harm matured. *See id*. at 614. Instead, the court reiterated that maturation of damages is not required to be fixed before limitations runs, and held that the incurring of attorneys' fees to address matters related to the attorneys' advice was sufficient. *See id.; see also Edwards v. Demedis,* 118 Md. App. 541, 553 (1997).

Any reasonable person in the position of Appellees would have discovered the claims they now seek to advance had reasonable diligence been exercised in 2016. The crux of the alleged malpractice by Appellees in this case is purported

21

advice of Appellants in July 2016 that plaintiff(s) could remove workers from the construction project and conclude its work. **JA 28 – JA 29**. On August 2, 2016, the Appellees terminated the construction contract and "immediately remove[d] its workers from the Project . . . ." **JA 29**. The Appellees were on inquiry notice of any claim on August 18, 2016, when they became aware that the surety "strongly disagreed" with Appellants' purported position "and threatened to hold Sens and [a subcontractor] in default." **JA 29** at ¶ 25. In fact, the Bankruptcy Trustee conceded that the Sens parties expressed concern with Appellants' approach at this time in 2016. **JA 29** at ¶ 26. Immediately thereafter, on August 30, 2016, the construction contract was terminated for cause, **JA 29** at ¶ 27, and demand was made by the sureties on the Sens Parties pursuant to the performance bond. **JA 30** at ¶ 31.

The clear underpinning of the claims in the Surety Lawsuit and the alleged malpractice claim against Appellants is the effect of the Sens Parties walking off the job in August 2016. The alleged bad advice leading to the claims was that "Mr. Beach told us to leave the job without notice" and that occurred in August 2016. **JA 439** at lines 2-8. Due to the financial consequences of walking away from the project, the indemnitors, including Sens, SMI, Roy Sens and Melanie Sens, were unable to post the deposit." **JA 30** at ¶ 31. Again, the Sens Parties were aware at that time in late 2016 of the connection between the alleged advice to walk off of the project and the resulting harm. On December 21, 2016, the sureties filed the Surety

22

Lawsuit seeking damages of $17,575,838.84.  **JA 31** at ¶ 35.  Driving the point home, the Sens Parties made it clear that "[a]s a result of walking off the job and not being able to pay its subcontractors and supplies, Sens faced claims from the subcontractors and suppliers which it was unable to honor." **JA 31** at ¶ 36.  The Sens Parties were, therefore, unquestionably on inquiry notice of the potential claims against Appellants at that time in late 2016 because according to the sureties and the Sens Parties, it was the walking off of the job upon the alleged advice of the Appellants that gave rise to termination of the contract, the demand by the sureties, and the Surety Lawsuit.  The only other evidence in the record relating to the claims is the maturation of the alleged harm by entry of summary judgment in December 2018.  This evidence, as discussed above, is meaningless under Maryland law for accrual of limitations.

These facts in evidence from 2016 provided the Appellees with "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued."  *See, e.g., Windesheim v. Larocca,* 443 Md. 312, 327, 116 A.3d 954, 962-63 (2015); *see also Poffenberger,* 290 Md. at 637 ("the discovery rule contemplates actual knowledge that is express cognition, or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging

the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued."). The Court of Appeals stated that "the commencement of the limitations period is not postponed until the conclusion of the diligent investigation, but continues to run during that period." *Am. Gen. Assur. Co. v. Pappano,* 374 Md. 339, 351, 822 A.2d 1212, 1219 (2003). "[I]n simple terms, a plaintiff is only on inquiry notice, and thus the statute of limitations will begin to run, when the plaintiff has 'knowledge of circumstances which would cause a reasonable person in the position of the plaintiff[] to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [tort].' In such a situation, should the plaintiff fail to seek out the facts supporting a cause of action, it can fairly be said that the plaintiff has inexcusably slept on his rights." *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448-49 (1988), *citing O'Hara v. Koven*, 305 Md. 280, 302 (1986).

Certainly, upon being served with a lawsuit as a party, where the lawsuit seeks more than $17 million in personal liability, and incurring attorneys' fees as in the *Fairfax* case, one would understand there is an issue. Any reasonable person would inquire as to all causes and bases for the suit. It is *not* reasonable for a party to participate in a lawsuit for more than two years, accruing time, expense, and attorneys' fees, and only investigate or inquire as to the causes of the lawsuit after an adverse ruling is entered. This Court has adopted this approach, which both the

24

Bankruptcy Court and District Court failed to address. In *In re Field Farms Ltd. P'tnship*, 120 F.3d 261 (4th Cir. 1997) (published at 1997 U.S. App. LEXIS 21249, this Court analyzed the discovery rule in a legal malpractice claim. It held that "in actions involving malpractice, . . . 'the cause of action accrues when the wrong is discovered or when with due diligence it should have been discovered.'" *Id.* at *11 (*quoting Fairfax Savings v. Weinberg & Green*, 112 Md. App. 587, 685 A.2d 1189, 1201 (Md. App. 1996), in turn, quoting *Leonhart v. Atkinson*, 265 Md. 219, 289 A.2d 1, 4 (1972)). This Court found that limitations began to run when plaintiff received a claim notice relating to an alleged amount due to the plaintiff. *See id.* at *12. If notice of a claim is sufficient to accrue for purposes of limitations, then certainly demands and the lawsuit that exist in this case are more than sufficient notice.

Appellees were, therefore, on notice of the claim on September 8, 2016, when the sureties made a claim notice, like in *Field Farms*, on the indemnitors, including SMI, which SMI alleges it was unable to post **JA 30** at ¶ 31, and on November 22, 2016, when the owner and surety entered into a takeover agreement **JA 30** at ¶ 33. Certainly, reasonable people could not differ on the proposition that Appellees were on notice when they were sued on December 21, 2016, and when they were served with the Surety Lawsuit in January 2017. Appellees claim that the Sureties' lawsuit was an adverse event resulting from the alleged erroneous legal advice, and when they received notice of the lawsuit, any reasonable person in the position of

Appellees would make inquiry. Indeed, all facts with respect to the adverse consequences of Appellants' advice were known to the Sens Parties when the Sureties' adverse claim against the Sens Parties was filed. It was incumbent upon Appellees under Maryland law to exercise reasonable diligence which they did not do. The limitations period thus expired in December 2019, and the Bankruptcy Trustees' claims brought thereafter are barred. Relying on the entry of judgment in the Surety Lawsuit to begin the limitations period is contrary to Maryland law.

## B. Tolling by the Continuation Doctrine

The Bankruptcy Court erroneously applied the continuation of events principle beyond the time when the attorney client relationship between the parties terminated. This is wrong for two reasons: (1) there is no legal support to applying the continuation of events to a time period post-dating a termination of representation, and (2), this Court has held, citing the Maryland Court of Appeals, that "even though an attorney-client relationship may continue after the wrong has occurred, the limitations nevertheless begin to run when the party knew or should have known of the legal harm." *In re Field Farms Ltd. P'ship*, 1997 U.S. App. LEXIS 21249 (4th Cir. Aug. 11, 1997).

First, the significance of when the firm stopped acting as counsel is at that point, a person of ordinary prudence would stop looking to the attorney for guidance and advice. No evidence at all was presented at the hearing about any ongoing

26

affirmations of the alleged advice at any time after July 2016, and the January 4, 2017 letter makes it clear that no additional advice would be provided after that time as the attorney-client relationship was terminated. There is no Maryland law that supports the Bankruptcy Court's finding that the continuing relationship tolling the statute of limitations is applicable even ***after*** the attorney-client relationship has been terminated. *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.*, 152 Md. App. 698, 714 (2003) (stating that the "confiding party may rely upon the 'good faith of the other party so long as **the relationship continues to exist**") (emphasis added); *Bresler v. Wilmington Tr. Co*., 348 F. Supp. 3d 473, 485 (D. Md. 2018) (holding that "statutes of limitations for certain claims are tolled during the existence of a fiduciary relationship gives the confiding party the right to rely on the good faith of the other party "so long as the relationship continues to exist"); *see also Watson v. Dorsey*, 265 Md. 509, 533 (1972) (noting that limitations began even though a fiduciary relationship continued); *Leonhart v. Atkinson*, 265 Md. 219 (statute of limitations began to run even though a fiduciary relationship continued). Thus, the limitations here would begin no later than January 4, 2017.

Second, at a minimum, after the termination of representation and during the pendency of the suit, a reasonably prudent person in Sens' position would certainly investigate the available defenses and mitigation of damages, which includes whether there are any claims against any third parties, such as any potential claims

against Appellants after WTP terminated the attorney-client relationship. As such, the statute of limitations accrued, at the latest, once WTP's representation of Sens was terminated, more than three years before the filing of the suit.

In the *In re Field Farms* matter, the claimant sought to have its legal malpractice claim held timely and not barred by limitations by arguing that "the law firm's continued representation during this period prevented them from discovering their harm." *Id.* at *4. This Court held that "[t]he Maryland courts have rejected this approach" and therefore the ongoing representation did not affect the running of the limitations period. *Id.* (*citing Watson*, 290 A.2d at 530 (noting that limitations run even though relationship continued); *Leonhart*, 289 A.2d at 3 (finding limitations ran despite assurances by professional that advice was correct).

The Maryland Court of Special Appeals has stated that "[t]he continuation of events theory is based on the equitable principle of detrimental reliance. When a relationship develops between two parties, built on trust and confidence, the confiding party may rely upon the 'good faith of the other party ***so long as the relationship continues to exist***.'" *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.,* 152 Md. App. 698, 714, 834 A.2d 170, 179 (2003). Similarly, in *Bresler v. Wilmington Tr. Co*., 348 F. Supp. 3d 473, 485 (D. Md. 2018), the Court held that "statutes of limitations for certain claims are tolled during the existence of a fiduciary relationship between the parties because the relationship "gives the confiding party

28

the right to relax his or her guard and rely on the good faith of the other party ***so long as the relationship continues to exist***.'"  Here, the attorney client relationship terminated in January 2017.  The Bankruptcy Court's reliance on *Supik* to extend the time for accrual for more than a year past the termination of the attorney client relationship, to December 2018, is in error.  In this matter, not only was there no evidence of any affirmations by Appellants, but there was no new information revealed at a later time - the same facts known to Appellees in December 2018 were also known in January 2017, specifically, that the Sens Parties were subject to a lawsuit brought by the Sureties, which Appellees now claim is the basis for their legal malpractice claim.

Under the circumstances present here, where Appellees were subject to a lawsuit as a result of the purported erroneous advice, where the attorney client relationship had concluded, and where Appellees had the benefit of the advice from independent counsel in the pending surety claim, the continuation of events principle has no application, and does not toll limitations past January 2017.  *See also Watson v. Dorsey,* 265 Md. 509, 290 A.2d 530, 533 (Md. 1972) (noting that even though attorney-client relationship may continue after the wrong has occurred, the limitations nevertheless begin to run when the party knew or should have known of the legal harm); *Leonhart v. Atkinson,* 265 Md. 219, 289 A.2d 1, 4 (finding that statute of limitations began running when tax deficiency was assessed despite fact

29

that tax accountant remained as the plaintiffs' accountant, continued to prepare their tax returns, and repeatedly gave assurances that the IRS position was incorrect); *In re Field Farms Ltd. Pshp.,* at \*12-13. Given these facts, and in light of well-established Maryland law regarding the statute of limitations, the Bankruptcy Court and District Court erred in applying the continuous representation as a tolling of the limitations.

## C. The Tolling Agreement Did Not Toll the Bankruptcy Trustee's Claims

When a debtor files for relief under the Bankruptcy Code, an estate is created that is comprised of "all legal or equitable interests of the debtor in property as of the filing date." 11 U.S.C. §§ 301-303. "Property of the estate includes all of the debtor's interests in any cause of action that has accrued prior to the bankruptcy petition." *Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977 (4th Cir. 1984). In Chapter 7 cases, "[i]f a cause of action is part of the estate of the bankrupt then the trustee *alone* has standing to bring that claim." *See*, *e.g., Wilson v. Dollar Gen. Corp*., 717 F.3d 337, 343 (4th Cir. 2013). Under no objective reading of the Tolling Agreement is the Bankruptcy Trustee's or bankruptcy estate's asserted claims against the Appellants tolled, and the Bankruptcy Trustee is not a party to the agreement. *See, e.g., James v. Circuit City Stores*, 370 F.3d 417, 422 (4th Cir. 2004) (persons were not entitled to the benefits of the tolling agreement where they were "not properly described as parties to the agreement."). The Tolling Agreement only

applies to "Potential Claims" that may be brought by SMI, Roy Sens, and Melanie Sen. Thus, the Bankruptcy Trustee was required to file the claims at the latest by January 2020, which did not occur. The relation-back doctrine does not operate to revive a claim which has already expired at the time of an initial filing. Federal Rule of Civil Procedure 17 provides that after substitution, "the action proceeds *as if it had been originally commenced by the real party in interest*." Fed. R. Civ. Proc. 17(a)(3) (emphasis added). The Maryland corollary rule expressly states that the "substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Md. Rule 2-201. Because the real party in interest—the Bankruptcy Trustee—was barred by limitations, the relation back concept would mean the Amended Complaint filed on February 28, 2020 is barred.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the District Court's finding that the Bankruptcy Court's declaratory ruling with respect to the issue of the statute of limitations for the Sens Parties' claims against WTP and direct that the claims of the Bankruptcy Trustee be dismissed with prejudice as barred by the statute of limitations.

31

Respectfully submitted,

WHITEFORD TAYLOR & PRESTON LLP


/s/ Kevin G. Hroblak
Kevin G. Hroblak, Bar No. 26180
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202-1636
(410) 347-8700
khroblak@wtplaw.com

*Counsel for Appellants*



Respectfully submitted,



*/s/Alvin I. Frederick*
Alvin I. Frederick (01459)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474 (phone)
(410) 752-0611 (fax)
E-mail: frederick@ewmd.com
*Attorney for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*7882*] words.

    [ ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.  This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2019*] in [*14pt Times New Roman*]; *or*

    [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:                                   */s/ Kevin G. Hroblak*
                                         Kevin G. Hroblak, Bar No. 26180


                                         */s/Alvin I. Frederick*
                                         Alvin I. Frederick (01459)

33

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of October, 2022, Appellants'

Brief was served via the Court's ECF system and by first class mail, postage prepaid,

to:

> Christopher G. Hoge, Esquire
> 1211 Connecticut Avenue, NW
> Suite 300
> Washington, DC 20036
> *Counsel for Plaintiffs*
>
> Wes P. Henderson, Esquire
> Patrick D. Gardiner, Esquire
> Henderson Law, LLC
> 2127 Espey Court
> Suite 204
> Crofton, MD 21114
> *Counsel for Plaintiffs*
>
> Daniel M. Press, Esquire
> Chung & Press, P.C.
> 6718 Whittier Avenue
> Suite 200
> McLean, VA 22101
>
> Randall L. Hagen, Esquire
> Crowell & Moring, LLP
> 1001 Pennsylvania Ave., NW
> Washington, DC 20004

> */s/ Alvin I. Frederick*
> Alvin I. Frederick (01459)